**UNITED STATES DISTRICT COURT**
**for the**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **RHEA MILARDO** : | |
| : | **CIVIL ACTION NO.** |
| : | |
| **vs.** : | **303 CV 401 (CFD)** |
| : | |
| **TOWN OF WESTBROOK,** : | |
| **WESTBROOK POLICE UNION,** : | |
| Local 1257, AFSCME Council 15, : | **March 19, 2004** |
| and **DOUGLAS SENN** : | |

**AFFIDAVIT IN OPPOSITION TO**
**MOTION TO ENFORCE SETTLEMENT**

**STATE OF CONNECTICUT**
                                ss:    **Simsbury**                    **March 19, 2004**
**COUNTY OF HARTFORD**

On this date personally appeared Rhea Milardo who, under oath, stated as follows:

1. My name is Rhea Milardo. I live at 5 Rocky Point Road, Old Saybrook CT 06475

2. I am a constable in Westbrook, Connecticut and a member of the Westbrook Police Union, Local 1257, P.O. Box 855, Westbrook CT 06498 (the "Union")

3. I worked as a constable for over thirteen years and remain so employed.

4. I have been a member of the Union at all relevant times.

5. On December 5, 2003, I participated in a mediation session before Magistrate Judge Garfinkel which resulted in a proposed settlement involving the following:

**Affidavit in Support of Opposition to Motion to Enforce Settlement - Page 1**

      a.      Payment of a monetary sum;

      b.      Revisions to the EEO Policy of the Town of Westbrook;

      c.      An agreement not to retaliate against me on the basis of my assertion of my civil rights;

      d.      An agreement that the amount of settlement would be confidential, a provision insisted upon by Defendants;

      e.      A release of all claims;

      f.      A dismissal of my action with prejudice.

6. Defendants have failed to comply with their agreement.

7. The Local Union has retaliated against me by publicly associating my acceptance of the settlement with misappropriation of funds raised from the public to support police activities.

**EEO Policy**

8. The Town of Westbrook has a minimal equal employment opportunity policy ("EEO Policy") with respect to race, ethnic and sex discrimination.

9. The underlying dispute culminated with the declaration of Senn before assembled Westbrook constables in his bid for election of the Union President that he would not work with 'niggers, spic or women', and he pointed at me for emphasis.

10. For 13 years, Senn acted maliciously and underhandedly in an effort to force my resignation from the force because I was a woman, the details of which are set forth in my complaint.

11. At various times, the Defendants have suggested that I failed to follow proper procedures in processing my complaint of sex discrimination.

12. Attached hereto is the EEO Policy of the Town of Westbrook. It contains no procedures for a discrimination victim to follow when he or she seeks to make a complaint of illegal discrimination.

13. At the mediation session, my counsel suggested that the EEO Policy could be revised, among other things, to provide defined procedures for making complaints of discrimination and for providing that at least one woman be identified as a person responsible for receiving complaints of discrimination.

14. The adoption of a new EEO Policy was a material term of the settlement because (1) I did not want other discrimination victims to be subjected to criticism for not following non-existent procedures and (2) the Town of Westbrook would be required to take an affirmative act to declare that illegal discrimination would not be tolerated as it has in the past.

15. The Town of Westbrook has never proposed any amendment to the EEO Policy, thereby reneging on its promise at the mediation and defeating one of my key considerations for accepting the settlement.

16. At my instruction and my expense, I directed my attorney to prepare a proposed EEO Policy, a true copy of which is attached. The Town of Westbrook never responded to this suggested policy.

17.	The Town has not performed as promised during the mediation.

**Confidentiality**

18.	During the mediation, Defendants repeatedly insisted that the amount of the cash consideration be kept confidential and secret.  I agreed to this term.

19.	Since the mediation session, Defendants have either disclosed the cash consideration or boasted of their triumph.

20.	The State Union found it necessary to boast that it settled these cases for a 'nominal sum'.  Attached hereto is a "News Bulletin" from the State Union in which the Union claims it successfully negotiated a settlement, after having advised its members that it was for a 'nominal sum."  The Union claims that it "successfully defended" this lawsuit.

21.	The State Union failed to disclose to its members, including me, that it was the public comments of Attorney Brown which formed the basis for the civil rights retaliation, invasion of privacy and defamation claims made the basis of this action.

22.	Initially, the State Union first labeled me as having had a history of 'being difficult', an assertion that the claim of sex discrimination was not because of Senn's repugnant speech and action but because I was making trouble where none existed.

23.	The announcement of its successful defense of the case and the settlement for a 'nominal sum' reinforced the initial slander which caused me to sue the State Union.

24. Attached hereto is a Hartford Courant story which appeared in the March 13, 2004 shoreline edition. The president of the Local Union announced the amount of the settlement.

25. In its motion to enforce the settlement, the Town of Westbrook has disclosed what it previously insisted I could not disclose.

**Retaliation**

26. In response to interest by the community, a Mountain Bike Patrol Unit (the "Bike Patrol Unit") has been created within the Westbrook Constabulary.

27. The Town of Westbrook indicated that it could not fund such a program, and several constables solicited funds from town residents and businesses to finance the acquisition of bikes, the training of officers, and other necessary equipment and uniforms. (the "Bike Fund")

28. Upon information and belief, First Selectman Palermo advised Officer Quinones that the funds should be deposited in the bank account of the Local Union.

29. In 2003, Officer Quinones and I were assigned as members of the Bike Patrol Unit.

30. Because of the popularity of the Bike Patrol Unit program, the Local Unit intended to equip and train an additional officer with the remaining proceeds in the Bike Fund.

31. At a meeting of the Local Union, Union president Joseph Pucillo informed the constables present that a portion of the Bike Fund had been spent to pay for the settlement of this case and the action brought by Officer Quinones.

32. According to an article appearing in the March 13, 2004 Hartford Courant, Pucillo blamed Officer Benjamin Quinones for the misappropriation of the Bike Funds, the newspaper reporting his comments to be as follows:

> "If anyone made off with the money, [Pucillo] added, it was Quinones. 'It's not in my pocket or anyone else's pocket - it's in his pocket."

A true and correct copy of the article is attached hereto.

33. I believe that Officer Quinones has been accused of misappropriation of the Bike Funds because he asserted his civil rights and accepted the settlement proceeds.

34. Such an allegation taints my acceptance of settlement funds, which have now been publicly linked to misappropriation of the Bike Funds obtained from the residents and businesses of the Town of Westbrook.

35. Such an accusation violates the agreement not to retaliate against me for having asserted my civil rights. I stand or will stand accused of misusing, misappropriation or stealing public money because I agreed to settle this action.

36. At a meeting of the Local Union, Pucillo assured the members that this diversion of the Bike Fund had been approved by an unnamed Assistant Attorney General.

37. In further retaliation against me, I have been informed by Trooper First Class Robert Hart that First Selectmen Palermo has represented that I will be denied any further Bike Patrol Unit assignments until I conclude this settlement. My job duties are being threatened because I have asserted my civil rights and have refused to accept less than was agreed in the December 5, 2003 mediation.

_____
Rhea Milardo

On this day, personally appeared before me Rhea Milardo who, on oath, swore that the above and foregoing statements were true and correct to the best of her recollection and knowledge.

**SIGNED** this \_\_\_\_ day of March 2004.

_____
Notary Public /
Commissioner of the Superior Court

**Affidavit in Support of Opposition to Motion to Enforce Settlement - Page 7**

**RHEA MILARDO,**
**PLAINTIFF**


By: _____
Charles D. Houlihan, Jr.
Federal Bar No. CT 11416
Post Office Box 582
Simsbury, CT 06070

Telephone:  (860) 658-9668
E-Mail:     charles.houlihan@sbcglobal.net
Telecopier: (860) 658-1339

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been mailed by first class United States Mail, postage prepaid, to:

| | |
|---|---|
| Alexandria L. Voccio, Esq | Hinda K. Kimmel, Esq. |
| Michael J. Rose, Esq. | Eileen C. Duggan, Esq. |
| Martha A. Shaw, Esq. | Susan M. Phillips, Esq. |
| Howd & Ludorf | Matthew E. Auger, Esq. |
| 65 Wethersfield Avenue | Suisman, Shapiro, Wool & Brennan |
| Hartford, CT  06114 | Two Union Plaza, Suite 200 |
| | P.O. Box 1591 |
| fax: 522-9549 | New London, CT  06320 |
| | fax:   860-442-0495 |
| Representing Douglas Senn | |
| | Representing the Town of Westbrook |

**Affidavit in Support of Opposition to Motion to Enforce Settlement - Page 8**

Eric R. Brown, Esq.
AFSCME Council 15 Legal Dept.
290 Pratt Street
Meriden, CT   06450

fax:  203-237-2262

Representing Westbrook Police Union,
Local 1257 and AFSCME Council 15

on this the ___ day of September 2003.

                                                                   _____
                                                                   Charles D. Houlihan, Jr.

Town, Police Union Blamed
Constable Files Bias Complaint

July 18, 2002
By SUDHIN S. THANAWALA, Courant Staff Writer

WESTBROOK -- A local constable has filed a complaint with the state against the town and police union, saying she was discriminated against and harassed because she is a woman.

Constable Rhea Milardo - the only woman among the department's 10 constables - said another constable, Douglas Senn, refused to work with her and told other constables to do the same, according to the complaint filed last month with the state Commission on Human Rights and Opportunities. She contends that Senn also referred to her using a lewd remark.

Milardo also has sued Senn, said Charles Houlihan Jr., her attorney.

Senn, former president of the police union, is serving a suspension for remarks he made against minorities in front of other constables on May 14. The state police internal affairs division is investigating that complaint. It was on the same day, Milardo says, that Senn said he would continue not to work with her.

Senn referred requests for comments Wednesday to union attorney Eric Brown. Brown said he was not familiar with the complaint. He said relations between the union and Milardo have been difficult in the past.

Town counsel John Bennet said he saw the complaint Wednesday morning and would not comment.

In her complaint, Milardo says the town and the union did not address her concerns when she complained to them.

Joseph Pucillo III, president of police union local 1257, said Milardo never approached him with her complaints. Pucillo said he has been president for more than a year.

Milardo is seeking relief including damages, front and back pay, interest, attorney's fees, and costs and expenses of pursuing her claim.

The commission has 210 days to investigate the complaint, Houlihan said. Milardo, who has been on the force for more than 13 years, has requested the complaint be referred to the federal Equal Employment Opportunity Commission.

**Affidavit in Support of Opposition to Motion to Enforce Settlement - Page 10**

Law Offices of

# Charles D. Houlihan, Jr.

1276 Hopmeadow Street
Post Office Box 582
Simsbury, Connecticut   06070

**Admitted to Practice:**  **Telephone:**   860- 658-9668
   **Connecticut**  **Telecopier:**   860- 658-1339
    **Texas**  charles.houlihan@sbcglobal.net

**VIA TELECOPIER**

January 23, 2004

| | |
|---|---|
| John Bennett, Esq.<br>Gould, Larson, Bennet, Wells &<br>McDonnell<br>35 Plains Road<br>P.O. Box 959<br>Essex CT 06426<br><br>fax:  860-767-2742 | Susan M. Phillips, Esq.<br>Suisman, Shapiro, Wool & Brennan<br>Two Union Plaza, Suite 200<br>P.O. Box 1591<br>New London, CT   06320<br><br>fax:    860-442-0495 |

      Re:    Milardo v. Town of Westbrook, et al.

Dear John & Susan:

     The existing EEO policy provides little in the way of information concerning prohibited acts or the manner of utilizing the complaint process.  I enclose a proposed draft of a policy.

     Please advise if the Town is willing to accept this policy.

                              Sincerely yours,

                              S/

                            Charles D. Houlihan, Jr.

## EQUAL EMPLOYMENT OPPORTUNITY

The Town of Westbrook provides equal employment opportunities to all employees and applicants for employment without regard to race, color, religion, sex, national origin, age, disability, or status as a Vietnam-era or special disabled veteran in accordance with applicable federal laws. In addition, The Town of Westbrook complies with applicable state and local laws governing nondiscrimination in employment in every location in which The Town of Westbrook has facilities. This policy applies to all terms and conditions of employment, including but not limited to hiring, placement, promotion, termination, layoff, recall, transfer, leaves of absence, compensation, and training.

To further the principle of equal employment opportunity for all, The Town of Westbrook has developed affirmative action plans for minorities and women, individuals with disabilities, and Vietnam-era and special disabled veterans. These plans, or relevant portions of them, are available for your inspection upon request. Please ask your supervisor or a member of the human resources department for information regarding these plans.

The Town of Westbrook has adopted a policy of "zero-tolerance" with respect to unlawful discrimination or employee harassment. In this connection, The Town of Westbrook expressly prohibits any form of unlawful discrimination or employee harassment based on race, color, religion, sex, national origin, age, disability, status as a Vietnam-era or special disabled veteran, or status in any group protected by state or local law. Improper interference with the ability of The Town of Westbrook's employees to perform their expected job duties is not tolerated.

With respect to sexual harassment, The Town of Westbrook prohibits the following:

Unwelcome sexual advances; requests for sexual favors; and all other verbal or physical conduct of a sexual or otherwise offensive nature, especially where:

- Unwelcome sexual advances; requests for sexual favors; and all other verbal or physical conduct of a sexual or otherwise offensive nature, especially where:

- Submission to such conduct is made either explicitly or implicitly a term or condition of employment;

- Submission to or rejection of such conduct is used as the basis for decisions affecting an individual's employment; or

- Such conduct has the purpose or effect of creating an intimidating, hostile, or offensive working environment.

2. Offensive comments, jokes, innuendos, and other sexually- oriented statements.

Examples of the types of conduct expressly prohibited by this policy include, but are not limited to, the following:

- Touching, such as rubbing or massaging someone's neck or shoulders, stroking someone's hair, or brushing against another's body.

- Sexually-suggestive touching.

- Grabbing, groping, kissing, fondling.

- Violating someone's "personal space".

- Offensive whistling.

- Lewd, off-color, sexually-oriented comments or jokes.

- Derogatory comments or jokes about any person's race, religion, ethnicity, sexual orientation, and the like.

- Foul or obscene language.

- Leering, staring, stalking.

- Suggestive or sexually-explicit posters, calendars, photographs, graffiti, cartoons.

- Unwanted or offensive letters or poems.

- Sitting or gesturing sexually.

- Offensive E-mail or voice-mail messages.

- Sexually-oriented or explicit remarks, including written or oral references to sexual conduct, gossip regarding one's sex life, body, sexual activities deficiencies, or prowess.

- Questions about one's sex life or experiences.

- Repeated requests for dates.

- Sexual favors in return for employment requests, or threats if sexual favors are not provided.

- Sexual assault or rape.

- Any other conduct or behavior deemed inappropriate by The Town of Westbrook.

**EEO Policy – page 13**

### *Complaint Procedure*

Each member of management is responsible for creating an atmosphere free of discrimination and harassment, sexual or otherwise. Further, employees are responsible for respecting the rights of their coworkers.

If you experience any job-related harassment based on your sex, race, national origin, disability, or another factor, or believe that you have been treated in an unlawful, discriminatory manner, promptly report the incident to your supervisor, department or division head, or director of human resources or the Office of First Selectman or the Ombudman for Women as described below. This policy applies to all incidents of alleged discrimination or harassment, including those which occur off-premises, or off-hours, where the alleged offender is a supervisor, coworker, or even a non-employee with whom the employee is involved, directly or indirectly, in a business or potential business relationship.

Whenever the Office of the First Selectman is held by a man, the Board of Selectmen shall appoint, at the commencement of each new term of office, a female employee or Selectman of the Town of Westbrook who will be reasonably available to receive complaints of sex discrimination from Town employees. The designated person shall be referred to as the Ombudsman for Women and her identity will be posted in various job sites where Town employees regularly work.

Should the alleged discrimination or harassment occur at a time of the than your normal business hours, your complaint should be filed as early as practicable on the first business day following the alleged incident.

Please understand that the Company takes complaints of discrimination and harassment very seriously. Thus, there is no need to follow any formal chain of command when filing a complaint or when discussing or expressing any issue of concern regarding alleged discrimination or harassment, and you may bypass anyone in your direct chain of command and file your complaint or discuss or express any issue of concern with human resources, the First Selectman or the Ombudsman for Women at any time. The director of human resources, or someone under his or her supervision, will undertake an investigation of any complaints. All complaints will be kept confidential to the maximum extent possible. All employees have a duty to cooperate fully with the Company in connection with any such investigation.

If The Town of Westbrook determines that an employee is guilty of discriminating or harassing another individual, appropriate disciplinary action will be taken against the offending employee, up to and including termination of employment.

The Town of Westbrook prohibits any form of retaliation against any employee for filing a bona fide complaint under this policy or for assisting in a complaint investigation. However, if, after investigating any complaint of harassment or unlawful discrimination, The Town of Westbrook determines that the complaint is not bona fide

and was not made in good faith or that an employee has provided false information regarding the complaint, disciplinary action may be taken against the individual who filed the complaint or who gave the false information.

Use Of Bike Patrol Funds Questioned

BY KIM MARTINEAU
Courant Staff Writer

March 13 2004

WESTBROOK -- A local constable who launched a bike patrol program last summer using several thousand dollars in money donated by the public has accused the local police union of diverting some of the remaining money to settle a racial discrimination lawsuit he filed against the union last year.

Officer Benjamin Quinones sued the town and the Westbrook Police Union in May 2003, after the town fired another officer, Douglas Senn, amid allegations Senn had made disparaging remarks about Puerto Ricans. Quinones settled the lawsuit in January under a confidential agreement, but according to two sources, the town's insurance agency agreed to pay Quinones $25,000 while the union reluctantly agreed to pay $1,000.

The union recently voted to pay Quinones $1,000 from its various accounts, which include money Quinones had raised from local businesses to launch his beach bike patrol program. Quinones says the move was retaliation for his lawsuit - and possibly illegal. He has complained to the state police, who oversee the town's six member part-time police force. Copies of his complaint were distributed to the media Friday.

"Since the money was used for the wrong reason I will not be able to get the Mountain Bikes serviced for the beginning of the season," he wrote in a Feb. 25 letter to Trooper Thomas Inglis. "I am also unable to send any other officers to Mountain Bike School."

Inglis refused to comment on the complaint or say whether he plans to launch an investigation. Union president Joseph Pucillo said the union has done nothing wrong. Union members agreed to the settlement, he says, based on their lawyers' advice, not because they accepted any blame for a former member's remarks.

"I'm not happy this money is gone," said Pucillo. "(But) for me to have to pay for someone else's bigotry is offensive."

If anyone made off with the money, he added, it was Quinones. "It's not in my pocket or anyone else's pocket - it's in his pocket."

Quinones has an unlisted phone number and could not be reached for comment.

Roughly $3,600 was spent to purchase three bikes and train four officers to use them, according to Pucillo, leaving $1,400. First Selectman Tony Palermo refused to comment on the dispute. "This is all between him and the union," he said.

In 2002, state police investigated a complaint that Senn, a former union president, made racist and sexist remarks at a union meeting. Senn allegedly said he wouldn't work with

blacks, Hispanics or women. Senn told state police that he may have made insensitive remarks, but claimed they were only a joke, according to the state police report. He later posted a letter of apology in the squad room. The board of selectmen later voted to fire him. Senn has been fighting ever since to get his job back.

Another constable, Rhea Milardo, has accused Senn of sexual harassment and has a federal lawsuit pending against him, the town and the police union.

Copyright 2004, Hartford Courant