FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MAY 7  2 05 PM '04

U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | |
|---|---|
| RHEA MILARDO | |
| VS. | CIVIL ACTION NO.: 3 03 CV 0401 MRK |
| TOWN OF WESTBROOK, ET. AL. | MAY 7, 2004 |

## REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO ENFORCE SETTLEMENT

The defendants Westbrook Police Union Local 1257, and AFSCME Council 15 (the union defendants) submit this memorandum in response to the plaintiff's opposition to the defendants' motion to enforce settlement.

The union defendants have joined the defendant Town of Westbrook's Motion to enforce Settlement Agreement dated February 25, 2004, and have submitted an affidavit in support of the motion dated February 27, 2004.

On March 20, 2004, the plaintiff filed her Opposition to the Motion to Enforce Settlement. The union defendants now respond to the assertions set forth in the opposition and in the plaintiff's affidavit.

I.   Background

A pre-trial settlement conference was held before the Hon. Magistrate Judge William Garfinkel on December 5, 2003. At that time, after lengthy negotiations among all involved parties, it was agreed that the case at bar would be settled along with the matter of Quinones v. Town of Westbrook, Docket No. 303CV0777 (JBA).

The settlement terms included payment in the total amount of $50,000

from the Town of Westbrook to the plaintiffs who would split the payment evenly. Contribution in the amount of $2000 was to be made by the Union defendants to the Town. The agreement did not require that the defendants maintain the confidentiality of the agreement, although there was a requirement that the plaintiffs maintain confidentiality of the agreement.

The Union defendants were concerned that they be required to report the results of the settlement back to their members, which total 4000 members as part of AFSCME Council 15, and therefore the integrity of any confidentiality covenant would be impossible to maintain from the Union defendants' perspective.

As part of the agreement, the plaintiffs agreed to provide a full and complete release of all claims to the defendants.

Following the negotiation of the settlement, Mr. Quinones signed and executed an agreement incorporating the terms as reached on December 5, 2003.

II. Argument

    A. The Plaintiff has Acknowledged Reaching a Settlement Agreement on December 5, 2003.

The plaintiff has raised a number of claims which she concludes should allow her to negate the settlement agreement which was reached on December 5, 2003. The fact is that the plaintiff is attempting to leverage additional

consideration out of the defendants, after reaching an agreement containing terms identical to the terms which were agreed and executed by Mr. Quinones.

Indeed, the plaintiff's counsel sent a letter dated September 27, 2003[1] (sic) to Attorney Phillips and Attorney Bennett in which he claimed that the plaintiff was having "reservations and doubts about the sufficiency of the settlement," "based upon a perception that her situation will deteriorate rather than improve." (Exhibit A attached hereto).

Attorney Houlihan added that he had "explored a variety of conditions which might make the settlement satisfactory." He stated that the plaintiff "agreed to proceed with the settlement if she would be permitted to appear and testify at the Labor and Mediation hearing with her attorney and give voice to the conduct which resulted in Senn's termination."

Attorney Houlihan concluded, "please let me know whether the settlement can proceed."

On no less than four occasions in his letter of December 23, 2003, Attorney Houlihan acknowledged that a "settlement" had been reached between his client and the defendants on December 5, 2003.

Notwithstanding the plaintiff's admissions that a settlement agreement

---

[1] In fact the letter was received by Attorney Phillips on December 23, 2003, and was likely sent on December 23, 2003, as Attorney Houlihan makes reference to the "mediation two weeks ago."

3

had been reached, and without agreeing to modify the terms of the Agreement, the Union defendants unilaterally subpoenaed the plaintiff to the SBMA hearing of the defendant Senn's grievance of his termination from employment against the Town of Westbrook.

It goes without saying that by agreeing to settle the case against the defendants, the plaintiff, who agreed with counsel by her side, was aware that her acceptance of the terms would eliminate her right to "give voice to the conduct which resulted in Senn's termination" in this proceeding. Without that opportunity, there was no guarantee that she would ever be able to "give voice" to her claims. With a full understanding of this lost opportunity, the plaintiff nevertheless agreed to the settlement on December 5, 2003.

It appears that the plaintiff succumbed to either "cold feet" or a baser instinct of greed in trying to siphon additional terms from the defendants in order to conclude this matter.

However, this court cannot countenance such tactics by the plaintiff. A settlement was reached on December 5, 2003.

The Town of Westbrook, in its Motion to Enforce the Settlement Agreement, which the Union defendants hereby join, has set forth the law of this Circuit mandating that the agreement be enforced by this Court.

4

### B.   Any claimed post-settlement retaliation does not negate the enforceability of the settlement agreement.

The plaintiff has alleged in her opposition to the motion to enforce the settlement that certain conduct on the part of certain defendants has resulted in retaliation against her thereby negating the enforceability of the agreement.

The parties never agreed to make a prohibition on retaliation a term of the settlement agreement. Inasmuch as there is a prohibition against retaliation set forth in Title VII and CFEPA, there would have been no need to include such a redundant term in the settlement agreement.

However, even if such a term were to exist in the settlement agreement, proof of retaliation, by a separate action, would be required to negate the terms of the settlement agreement reached. A mere allegation of retaliation signifying a breach of the agreement, would not give the plaintiff the unilateral right to negate the agreement. Whether such a breach had occurred is a question to be raised in separate action for breach of the agreement.

Further, any claim of retaliation should properly be raised in a separate Title VII action, not as an addendum to the action at bar which has already been resolved.

### III.   Conclusion

Based on all of the foregoing, the defendants' motion to enforce the settlement agreement should be granted.

WESTBROOK POLICE UNION LOCAL
1257 AND AFSCME COUNCIL 15

By: _____
Attorney Eric R. Brown
CT 13519
AFSCME Co. 15 Legal Dept.
290 Pratt Street
Meriden, CT 06450
203-237-2250
Fax: 203-237-2262

6

## CERTIFICATION

The undersigned certifies that the foregoing was mailed postage prepaid to counsel for parties of record on the date set forth herein:

Susan Phillips
Matthew Augur
Eileen Duggan
Suisman, Shapiro, et. al.
2 Union Plaza
P.O. Box 191
New London, CT 06320

Michael J. Rose
Alexandria Voccio
Martha Ann Shaw
Howd & Ludorf
65 Wethersfield Ave.
Hartford, CT 06114-1190

John Bennett
Gould, Larson, et. al.
35 Plains Road
Essex, CT 06426

Charles Houlihan, Jr.
1276 Hopmeadow Street
P.O. Box 582
Simsbury, CT 06070-0582

_____
Eric R. Brown

# EXHIBIT A

Law Offices of

# Charles D. Houlihan, Jr.

**1276 Hopmeadow Street**
**Post Office Box 582**
**Simsbury, Connecticut 06070**

**Admitted to Practice:**
Connecticut
Texas

Telephone: 860- 658-9868
E-mail: CDH atty@aol.com
Telecopier: 860- 658-1339

**VIA TELECOPIER**

September 27, 2003

John Bennett, Esq.
Gould, Larson, Bennet, Wells &
McDonnell
35 Plains Road
P.O. Box 959
Essex CT 06426

fax: 860-767-2742

Susan M. Phillips, Esq.
Suisman, Shapiro, Wool & Brennan
Two Union Plaza, Suite 200
P.O. Box 1591
New London, CT 06320

fax: 860-442-0495

**Re: Milardo v. Town of Westbrook, et al.**

Dear John & Susan:

Since the rushed completion of the mediation two weeks ago, I have had numerous conversations with Officer Milardo concerning the resolution. Her reservations and doubts about the sufficiency of the settlement have hardened, based upon a perception that her situation will deteriorate rather than improve. She would prefer to continue the litigation to establish a record of Senn's offensive behavior and the Town's awareness of it. She feels the proposed settlement fails to hold anyone accountable for the sorry history of events.

I explored a variety of conditions which might make the settlement satisfactory. Ultimately, she agreed to proceed with the settlement if she would be permitted to appear and testify at the Labor and Mediation hearing with her attorney and give voice to the history of the conduct which resulted in Senn's termination.

I assume that this condition would require Senn's approval and acquiescence, which would also be a condition of the overall settlement. Both Senn and the unions have an interest in the consummation of the settlement.



RECEIVED
DEC 2 3 2003
BY: SP 2:50pm

John Bennett, Esq.
Susan M. Phillips, Esq.
December 23, 2003
Page 2

Over the course of time, there have been various comments made concerning the information provided during the Town's and State's investigation. When one key statement was said not to exist, Officer Milardo perceived that no thorough investigation documented the detailed history of her complaint. If she is not accommodated with this request, her preference is to proceed with discovery to establish the bases for her complaint.

Please let me know whether the settlement can proceed.

Sincerely yours,

S/

Charles D. Houlihan, Jr.

John Bennett, Esq.
Susan M. Phillips, Esq.
December 23, 2003
Page 2